IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PHL VARIABLE INSURANCE COMPANY, | Case No. 19-cv-06799-CRB |
| Plaintiff, | **ORDER GRANTING MOTION TO REMAND AND DENYING AS MOOT ADDITIONAL MOTIONS** |
| v. | |
| CONTINENTAL CASUALTY COMPANY, et al., | |
| Defendants. | |

Now pending is Plaintiff PHL Variable Insurance Company's ("PHL") motion to remand this action to the Superior Court for the County of San Francisco. Remand Mot. (dkt. 12) at 1. PHL filed its First Amended Complaint in that court, seeking a declaration of its rights under insurance policies it holds against Defendants Continental Casualty Company ("CNA") and Certain Underwriters at Lloyd's of London (the "Lloyd's Defendants"). See generally First Amended Complaint ("FAC"), Notice of Removal ("Notice") Ex. 2 (dkt. 1–3). CNA removed the action to this Court based on diversity jurisdiction. Notice at 3. CNA requests that the Court deny the motion to remand and dismiss or stay the action, or in the alternative, transfer it to the United States District Court for the District of Connecticut, where CNA already filed its own action against PHL regarding the same controversy. See generally Mot. to Dismiss or Stay, or Transfer ("Transfer Mot.") (dkt. 4). The Lloyd's Defendants, excess insurers in this case, move to dismiss the action against them for failure to state a claim, arguing that PHL cannot bring suit against them until PHL exhausts its primary policy with CNA. See Mot. to Dismiss (dkt. 20). For the reasons discussed below, the Court GRANTS the motion to remand, and DENIES AS MOOT the motions to transfer and dismiss.

## I.    BACKGROUND

### A.    The Coverage Dispute Actions

This litigation arises out of a pair of class actions that certain PHL life insurance policyholders filed against PHL in the Southern District of New York, alleging breach of contract. FAC at ¶¶ 14–18. PHL holds policies of its own that it contends should cover its costs relating to the underlying litigation. First, it holds a primary Management Liability Solutions Policy (the "Primary Policy") issued by CNA, which has a liability limit of $10,000,000. Id. at ¶ 10. Second, it holds two Excess Policies (the "First Excess Policy" and "Second Excess Policy") with Certain Underwriters at Lloyd's of London (the "Lloyd's Defendants"). Id. at ¶¶ 55–56. The First Excess Policy has a liability limit of $10,000,000, and the Second Excess Policy has a liability limit of $20,000,000. Id. at ¶ 58. PHL contends that it is entitled to full coverage of its defense costs under the policies, notified CNA to that effect, and requested indemnification. See id. at ¶¶ 24–26. CNA disputed the extent of coverage, and ultimately denied coverage entirely. See id. at ¶ 30. Meanwhile, PHL requested that the Lloyd's Defendants further articulate their position on the extent of coverage under the Excess Policies, which the Lloyd's Defendants refused to do. See id. at ¶¶ 60–65.

CNA was first to file in this controversy, having brought suit in the District Court for the District of Connecticut against PHL seeking declaratory relief as to the coverage dispute. See Transfer Mot. at 3–4. Shortly afterwards, PHL filed a Complaint in San Francisco Superior Court naming CNA, and then a FAC joining the Lloyd's Defendants. Notice at ¶¶ 1–5. CNA then removed the action to this Court. See generally Notice.

### B.    Lloyd's of London and its Underwriters

Certain of the issues raised in this case require an understanding of the peculiar organizational structure of Lloyd's of London ("Lloyd's") and its underwriters. Lloyd's itself is not an insurance company and does not underwrite risk. Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1083 (11th Cir. 2010). Rather, Lloyd's serves as a marketplace where investors, referred to as "Names," buy and sell insurance risk. Id. The Names are

organized through administrative subgroups called syndicates, which are themselves often organized into larger groups called consortiums.  Id.  The Names are severally, but not jointly, liable to the insured for their proportion of the underwritten risk.  Id.  The syndicates are not incorporated, but are generally organized by Managing Agents who may or may not be corporations.  Id.  The Names themselves can be people or corporations from many nationalities—not just the United Kingdom.  Id.

## II.     LEGAL STANDARD

### A.     Motion to Remand and Diversity Jurisdiction

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a). "A defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction."  Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing 28 U.S.C. § 1441).  District courts have diversity jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332 ("Section 1332").  Consistent with the framework outlined above, "[t]he party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction."  NewGen LLC v. Safe Cig, LLC, 840 F.3d 606, 613–14 (9th Cir. 2016).

If a district court ultimately determines that it lacks jurisdiction, the action must be remanded back to state court.  Martin v. Franklin Capital Corp., 546 U.S. 132, 134 (2005) (citing 28 U.S.C. § 1447).  The Ninth Circuit recognizes a "strong presumption against removal."  Hunter, 582 F.3d at 1042 (quoting Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)).  Thus, "'the defendant always has the burden of establishing that removal is proper,' and . . . the court resolves all ambiguity in favor of remand to state court."  Id. (quoting Gaus, 980 F.2d at 566).

### B.     Fraudulent Joinder

"Although an action may be removed to federal court only where there is complete diversity of citizenship, 'one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" <u>Hunter</u>, 582 F.3d at 1043 (quoting <u>Morris v. Princess Cruises, Inc.</u>, 236 F.3d 1061, 1067 (9th Cir. 2001)) (internal citation omitted); <u>see also</u> <u>Ritchey v. Upjohn Drug Co.</u>, 139 F.3d 1313, 1318–19 (9th Cir. 1998). "If a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." <u>McCabe v. Gen. Foods Corp.</u>, 811 F.2d 1336, 1339 (9th Cir. 1987).

That said, there is a "general presumption against fraudulent joinder," and defendants who assert that a party is fraudulently joined carry a "heavy burden." <u>Hunter</u>, 582 F.3d at 1046. Defendants must "show that the individuals joined in the action cannot be liable on any theory," <u>Ritchey</u>, 139 F.3d at 1318, and that "there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant," <u>Good v. Prudential Ins. Co. of Am.</u>, 5 F. Supp. 2d 804, 807 (N.D. Cal. Apr. 16, 1998). That is, "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" <u>Padilla v. AT&T Corp.</u>, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quoting <u>Burris v. AT & T Wireless, Inc.</u>, No. 06–CV–02904-JSW, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006)). As such, a court's "doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand." <u>Plute v. Roadway Package Sys., Inc.</u>, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. Apr. 18, 2001) (citations and internal quotation marks omitted).

"Where fraudulent joinder is an issue . . . [t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." <u>Ritchey</u>, 139 F.3d at 1318 (internal quotation marks omitted). If factual issues are in dispute, the Court must resolve all disputed questions of fact in favor of the plaintiff. <u>See</u> <u>Kalawe v. KFC Nat. Mgmt. Co.</u>, Civ. No. 90–007799, 1991 WL 338566, at *2 (D. Haw. July 16, 1991) (citing <u>Kruso v. Int'l Tel. & Tel. Corp.</u>, 872 F.2d 1416, 1426 (9th Cir. 1989)); <u>see also</u> <u>Mohammed v. Watson Pharm., Inc.</u>, No. SA

CV09-0079, 2009 WL 857517, at *6 (C.D. Cal. Mar. 26, 2009) ("A party is only deemed to have been joined 'fraudulently' if after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." (citations and internal quotation marks omitted)).

## III.   DISCUSSION

PHL asks the Court to remand the case to the San Francisco Superior Court, arguing that Defendants have not proven that (1) each Lloyd's Defendant has diverse citizenship and (2) the individual claim against each Lloyd's Defendant meets the minimum amount in controversy requirement.  See Remand Mot. at 8–12.  The Lloyd's Defendants respond that their evidence proves diversity of citizenship, and that they can meet the minimum amount in controversy by aggregating the claims against them.  If the Court determines that the Lloyd's Defendants are non-diverse, they argue that: (1) they were fraudulently joined; (2) the Court should extend supplemental jurisdiction over the claims anyway; and (3) if the Court does not extend supplemental jurisdiction, the Lloyd's Defendants should be severed and dismissed to perfect diversity jurisdiction over the rest of the claims.

As discussed below, the prevailing law requires that each claim against each Lloyd's Defendant meet the minimum amount in controversy requirement—they cannot aggregate the claims.  Even viewing the evidence in a light most favorable to Defendants, the claims against many of the Lloyd's Defendants cannot meet the requirement, as one of the Lloyd's syndicates consists of over a thousand Names.  Resultingly, the amount in controversy as to each individual Name in that syndicate is far below the required amount in controversy.  The rest of Defendants' arguments fail as well.  They were not fraudulently joined, the Court cannot exercise supplemental jurisdiction over the claims, and the Court, in its discretion, declines to sever the Lloyd's Defendants to perfect diversity.  Having no subject matter jurisdiction, the Court will remand the action, thus mooting Defendants' motions.

### A.   The Court Lacks Diversity Jurisdiction

The removing parties assert only diversity as a basis for subject matter jurisdiction in this

case. See Notice of Removal at 1. District courts have diversity jurisdiction over civil cases where (1) the matter "is between . . . citizens of different States," and (2) the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Consistent with the framework outlined above, "[t]he party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." NewGen LLC v. Safe Cig, LLC, 840 F.3d 606, 613–14 (9th Cir. 2016).

There is some disagreement among the Circuits as to how Lloyd's peculiar organizational structure impacts diversity jurisdiction analysis. Majestic Ins. Co. v. Allianz Int'l Ins. Co., 133 F. Supp. 2d 1218, 1221 (N.D. Cal. 2001) (explaining split between Second, Sixth, and Seventh Circuits). The prevailing trend, and the trend in California and in this District, is to adopt the Second Circuit's treatment of Lloyd's articulated in E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 931 (2d Cir. 1998), which requires a court to consider the citizenship and amount in controversy as to each Name for the purposes of diversity analysis. See Majestic Ins. Co., 133 F. Supp. 2d 1222; see also Certain Underwriters at Lloyd's of London Subscribing to Policy No. FINFR 1001771 v. Commonwealth Int'l, Inc., No. 2:12-CV-00824-ODW, 2012 WL 2328215, at *2 (C.D. Cal. June 19, 2012); Certain Underwriters at Lloyd's London v. Raytheon Co., No. C 01-03317 WHA, 2001 WL 1836268, at *2 (N.D. Cal. Dec. 4, 2001); Genstar Container Corp. v. Certain Underwriters at Lloyd's Subscribing to that Ins. Policy Numbered C70408, No. C-00-0361 PJH, 2000 WL 1897299, at *2 (N.D. Cal. Dec. 22, 2000). Squibb relied heavily on Carden, in which the Supreme Court held that diversity jurisdiction in a suit by or against an entity depends on the citizenship of all of its members. 160 F.3d at 931 (citing Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990)).

### 1.     Diversity of Citizenship

The Second Circuit held in Squibb, 160 F.3d at 931, that the party invoking diversity jurisdiction over Lloyd's underwriters must establish diversity of citizenship as to each of the individual Names that make up a syndicate, rather than just the lead underwriter or managing agent of a given policy. As the removing parties here, Defendants carry the burden of proving

diversity as to each Lloyd's Defendant.  Defendants alleged in their Notice of Removal that none of the Names are citizens of California or Connecticut.  Notice at 3.  Defense counsel also supplied declarations attesting that none of the Names are citizens of California or Connecticut.  See Bach Decl., Ex. A at ¶¶ 14–24; Lucas Decl., Ex. B at ¶¶ 14–44; Winterbourne Decl., Ex. C at ¶¶ 10–20; Pecego Decl., Ex. D at ¶¶ 10–20.

PHL argues that Defendants fail to establish that certain of the Names are corporations, as opposed to some other kind of business organization, thus barring the Court from determining citizenship.  See Remand Reply at 5 (citing Parse v. Those Certain Underwriters at Lloyd's London, No. CV1400782MMMJEMX, 2014 WL 12561586, at *2 (C.D. Cal. Mar. 4, 2014)).  In Parse, Lloyd's merely alleged that certain Names were "'entities' organized under the laws of the United Kingdom," id., whereas here, Defendants' Declarations specifically use the term "incorporated," see, e.g., Bach Decl., Ex. A at ¶ 15, so the argument that Defendants failed to plead incorporation fails.  PHL points out that in Liberty Nw. Ins. Co. v. Certain Underwriters at Lloyd's, No. 15-CV-02334-WHO, 2015 WL 5012758, at *3 (N.D. Cal. Aug. 24, 2015), Judge Orrick held that conclusory allegations that none of the Names were citizens of the forum state were insufficient, and remanded on that basis.  Although the Notice here is similar, defendants' Declarations affirmatively allege that each and every Name is incorporated, resides in, or is otherwise domiciled in the United Kingdom.  See Bach Decl., Ex. A at ¶¶ 14–24; Lucas Decl., Ex. B at ¶¶ 14–44; Winterbourne Decl., Ex. C at ¶¶ 10–20; Pecego Decl., Ex. D at ¶¶ 10–20.

Though the Notice of Removal fails to establish the Names' citizenship, the Declarations cure that deficiency.  In Certain Underwriters at Lloyd's of London Subscribing to Policy No. FINFR 1001771 v. Commonwealth Int'l, Inc., No. 2:12-CV-00824-ODW, 2012 WL 2328215, at *2 (C.D. Cal. June 19, 2012), Lloyd's affirmatively alleged that each Name was incorporated and did business in the United Kingdom; the court, noting that party moving for remand offered no contradictory evidence, held that the allegations were sufficient.  Such is the case here.  PHL does not offer any evidence to contradict Defendants' assertions, so the Court finds that they have proven diverse citizenship.

### 2. **Amount in Controversy**

The amount in controversy requirement is a different story. Under the policies at issue, the Names are severally, but not jointly, liable. Eagan Decl., Ex. B at 7 (dkt. 12–2). Therefore, Defendants must show that each Name meets the amount in controversy requirement. See Squibb, 160 F.3d at 933 ("Aggregation to achieve diversity jurisdiction is barred when the liability of the defendants is several and not joint . . . each and every severally liable defendant must, in the normal course of things, meet the amount in controversy").

Defendants argue that a case from the Southern District of Texas justifies aggregating the claims, but that case is not applicable here. See Remand Opp'n at 5 (citing Cronin v. State Farm Lloyds, No. CIV.A.H-08-1983, 2008 WL 4649653, at *5 (S.D. Tex. Oct. 10, 2008)). In Cronin, the court discussed at length the distinction between the entities in that case (called "Texas Lloyd's"), which are "singular legal entities created by Texas law," and the traditional Lloyd's entities present here. See id. In fact, the court in Cronin seemed to fully endorse the holding in Squibb as it pertains to Lloyd's of London policies, and did not argue against it. Squibb simply did not apply to the particular entities in Cronin, which were creatures unique to Texas law. See id. Thus, Cronin does not just fail to support aggregation of the claims here—it works directly against it.

Defendants' argument that the Court should only consider the consortium leader for diversity purposes fails as well. See Remand Opp'n at 6. Their only case supporting this argument involved the leader of a bank consortium suing a debtor, and citizenship questions stemming therefrom, but these facts have little relevance here. See Chase Manhattan Bank v. Motorola, Inc., 136 F. Supp. 2d 265, 271 (S.D.N.Y. 2001). Moreover, the court in Chase Manhattan specifically discussed Squibb and the state of the law as it pertains to Lloyd's. Id. at 269. The court noted that ordinarily, suits brought against Lloyd's Names require consideration of each and every Name for diversity purposes. See id. An exception to that rule, upon which Defendants rely, arises when an insured files suit against only the consortium leader in its individual, not representative, capacity, effectively excluding the Names as parties to the action. See id. But in the instant suit, PHL refers to the Names generally as parties and makes no mention

8

of specifically suing the consortium leaders in their individual capacities.  See FAC at ¶ 7.  As in

Squibb, the Court applies the amount in controversy requirement to each claim against each

defendant.

As they must, Defendants admit that they cannot meet this requirement.  Remand Opp'n at

6 (dkt. 33) ("PHL does seek more than $75,000 from each name comprising the Lloyd's

Defendants except one") (emphasis added).  One of the syndicates here, Canopius Syndicate 4444,

comprises 1,402 Names, each severally liable for its share of each policy.  As demonstrated in the

charts below, each Name in Canopius Syndicate 4444 is maximally liable for approximately

$1,072 ($357 from the First Excess Policy, and $715 from the Second Excess Policy), well short

of the required minimum.  Thus, it is not "one" defendant that fails to satisfy the amount in

controversy requirement, as Defendants assert, but 1,402.





Defendants argue that this is a "patently unreasonable interpretation" of the diversity jurisdiction requirements. Remand Opp'n at 5. Maybe so; in Carden, Justice Scalia acknowledged that requiring consideration of each member of an entity for diversity analysis is "technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization." See 494 U.S. at 196. Despite this acknowledgement, he maintained the law as described above. Id. at 195. Defendants are not wrong to argue, in addition, that this result seems unmoored from the purpose of the amount in controversy requirement; that is, keeping small cases out of federal court, see Remand Opp'n at 6, but policy arguments cannot overcome the clear directives of the law. Because many Lloyd's Defendants cannot satisfy the required amount in controversy, the Court finds that it does not have diversity jurisdiction over the case.

### B. The Court Lacks Supplemental Jurisdiction

Defendants argue that, in the absence of diversity, the Court should exercise supplemental jurisdiction over the Lloyd's claims. See Remand Opp'n at 7–9 (citing 28 U.S.C. § 1367 ("Section 1367")). Section 1367 allows a court to exercise supplemental jurisdiction over claims that arise out of the same case or controversy as a claim over which the court has original jurisdiction. However, Section 1367(b) states that when a court derives original jurisdiction solely from Section 1332 (i.e., diversity jurisdiction), there is no supplemental jurisdiction over claims made against parties joined under Rule 19 or 20. 28 U.S.C. § 1367(b). Defendants attempt to construe Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005) in their favor, but that case concerned supplement jurisdiction over non-diverse plaintiffs joined to an action. Id. at 560. Exxon Mobil Corp. reiterated the plain directive of the statute as it pertains to defendants, stating that "§ 1367(b) explicitly excludes supplemental jurisdiction over claims against defendants joined under Rule 20." Id. The Lloyd's Defendants are permissively joined parties per Rule 20, and the Court's original jurisdiction over the action stems from diversity, therefore the Court cannot have supplemental jurisdiction over the Lloyd's claims.

### C. The Lloyd's Defendants Were Not Fraudulently Joined

Defendants argue that the Lloyd's Defendants were fraudulently joined because PHL's cause of action against them cannot possibly succeed. See Remand Opp'n at 10–13. In order to prove fraudulent joinder, a defendant must prove that "after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." Kalawe v. KFC Mgmt. Co., 1991 WL 338566, at *2 (D. Haw. 1991) (citing Kruso v. Int'l Telephone & Telegraph Corp., 872 F.2d 1416, 1426 (9th Cir. 1989)). Although the removing defendant may present facts to prove the fraudulent joinder, courts "must resolve all disputed questions of fact in favor of the plaintiff." Good v. Prudential Ins. Co. of America, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).

Defendants' argument that PHL cannot possibly succeed on its claim against the Lloyd's Defendants because it has not exhausted the primary policy fails to persuade. See Remand Opp'n

at 11 (citing Iolab Corp. v. Seaboard Sur. Co., 15 F.3d 1500, 1504 (9th Cir. 1994)). However, PHL's claim against the Lloyd's Defendants is only for declaratory relief, not breach of contract. FAC at ¶¶ 81–87. The Ninth Circuit discussed declaratory relief in Iolab, but only to say that the district court did not abuse its discretion by declining to sua sponte treat the plaintiff's breach of contract action as a declaratory relief action. See Iolab, 15 F.3d at 1504–05. The plaintiff in Iolab brought a claim for breach of contract, not declaratory relief, and never asked the district court to treat the claim as a request for declaratory relief; rather, it argued on appeal that the district court should have done so on its own—a contention the Ninth Circuit rejected. Id. This issue simply is not present here, as PHL requested declaratory relief in the first instance.

Defendants fail to demonstrate that PHL cannot possibly succeed on its claim against Lloyd's, because California law allows insureds to file declaratory relief actions against excess insurers without showing exhaustion of primary policies. In California, "the party need not establish a right to a favorable declaration" to be entitled to declaratory relief. Lockheed Martin Corp. v. Cont'l Ins. Co., 134 Cal. App. 4th 187, 221 (2005), disapproved on other grounds by State of Cal. v. Allstate Ins. Co., 45 Cal. 4th 1008 (2009). California "does not require an insured to show a reasonable probability of exhaustion of its primary coverage before it may state a cause of action for declaratory relief against an excess insurer," and only requires "that there be an actual controversy relating to the legal rights and duties of the respective parties." Lockheed Martin, 134 Cal. App. 4th 220. PHL asserts a number of disputed issues regarding the coverage of the Excess Policies, see FAC at ¶¶ 82–86, and under California law, can seek a declaratory judgement to resolve those issues. Defendants, relying solely on their exhaustion argument, have not shown that PHL cannot possibly succeed on its request for declaratory relief against the Lloyd's Defendants after all ambiguities are resolved in PHL's favor. The Lloyd's Defendants were not fraudulently joined.

### D. Severance

Finally, Defendants argue that the Court, if unconvinced by their arguments above, should use its discretion under Federal Rule of Civil Procedure 21 to sever and dismiss the action against

the Lloyd's Defendants to perfect diversity jurisdiction. <u>See</u> Remand Opp'n at 9. Rule 21

provides that "the court may at any time, on just terms, add or drop a party" and that "[t]he court

may also sever any claim against a party." Fed. R. Civ. P. 21. Rule 21 grants a court

"discretionary power to perfect its diversity jurisdiction provided the nondiverse party is not

indispensable to the action under Rule 19." <u>Kirkland v. Legion Ins. Co.</u>, 343 F.3d 1135, 1142 (9th

Cir. 2003) (citing <u>Sams v. Beech Aircraft Corp.</u>, 625 F.2d 273, 277 (9th Cir. 1980)). In exercising

this discretion, "the paramount considerations are the interests of justice." <u>Anrig v. Ringsby</u>

<u>United</u>, 603 F.2d 1319, 1325 (9th Cir. 1978). The Ninth Circuit considers the four factors outlined

in Federal Rule of Civil Procedure 19(b) to determine if a party is indispensable. <u>See</u> <u>White v.</u>

<u>Univ. of Cal.</u>, 765 F.3d 1010, 1027 (9th Cir. 2014).

The Court is not obligated to, and will not, sever the Lloyd's Defendants from the case to

perfect diversity jurisdiction, as doing so would waste judicial resources. As discussed above,

using Rule 21 in this manner is discretionary. Even accepting without argument that the Lloyd's

Defendants are dispensable, <u>see</u> Remand Opp'n at 9, the Court is not obliged to sever them from

the case. Rather, a limit on the Court's discretion would arise only if the Lloyd's Defendants are

<u>indispensable</u>, in which case the Court would be <u>prohibited</u> from severing them to maintain

diversity. Defendants argue that all four of the Rule 19(b) factors weigh "in favor of dismissing

the Lloyd's Defendants," but provide no authority that endorses construing the factors in this way.

<u>See</u> <u>id.</u> Even accepting Defendants' application of the factors as correct, the factors are

outweighed considerably by the larger interest in justice, specifically judicial efficiency, and the

general presumption towards remand.

The Court will not sever the Lloyd's Defendants, because doing so will only add to the

already-prolific litigation surrounding the underlying dispute here. CNA filed the first suit

concerning this controversy in the U.S. District Court for the District of Connecticut, where that

suit continues. <u>See</u> Transfer Mot. at 3–4. Soon after, PHL filed its own action in the San

Francisco Superior Court. <u>See generally</u> FAC. Defendants then removed that case to this Court.

<u>See generally</u> Notice. PHL intimates that it could simply refile or resume the action against

Lloyd's in state court if the Court elects to sever it. <u>See</u> Remand Reply at 9 ("It would make <u>no</u>

1  sense to force PHL to litigate in two different forums to obtain the same declaratory relief

2  judgement") (emphasis in original).  Thus, if the Court did sever the non-diverse Lloyd's

3  Defendants, and retain jurisdiction over the claims against CNA, there could be three cases

4  progressing simultaneously, in three different courts, in two different jurisdictions, all concerning

5  substantially the same controversy.  This outcome imposes needless burden on all involved, and

6  creates a risk of inconsistent rulings that would confound the due administration of justice.  The

7  Court does not sever the Lloyd's Defendants from this action.

8  ## IV.     CONCLUSION

9       For the foregoing reasons, the Court GRANTS the motion to remand the case to the San

10  Francisco Superior Court, and DENIES AS MOOT CNA's motion to dismiss or stay, or transfer,

11  and the Lloyd's Defendants' motion to dismiss.

12     **IT IS SO ORDERED.**

13     Dated: March 18, 2020

14                                                        CHARLES R. BREYER
                                                         United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28